An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 25-947

Filed 6 May 2026

Wake County, Nos. 22JA000207-910, 22JA000208-910

IN THE MATTER OF:
V.A.V., H.A.V.

Appeal by Respondent Father from order entered 11 July 2025 by Judge V.A. Davidian III in Wake County District Court. Heard in the Court of Appeals 12 March 2026.

*Attorney Patricia M. Propheter, for Respondent–Appellant Father.*

*Wake County Attorney's Office, by Attorneys Mary Boyce Wells & David F. Hord IV, for Petitioner–Appellee Wake County Health and Human Services.*

*Administrative Office of the Courts, by Guardian ad Litem Staff Attorney Brittany T. McKinney, for Appellee Guardian ad Litem.*

MURRY, Judge.

Respondent Father appeals from an order terminating his parental rights to his minor children, V.A.V. (Violet) and H.A.V. (Heather).[1] Father's counsel filed a no-merit brief under North Carolina Rule of Appellate Procedure 3.1(e). After careful

---

[1]  In accordance with North Carolina Rule of Appellate Procedure 42(b), we refer to the minor children by pseudonyms to protect their identities. *See* N.C. R. App. P. 42(b).

review of the issue identified in the brief, we affirm the trial court's order terminating Father's parental rights.

## I. <u>Background</u>

In March 2021, Mother gave birth to Heather when she was fifteen years old. Eleven months later, Mother gave birth to Violet, at which time Wake County Health and Human Services (WCHHS) became involved in this case due to reports of neglect.[2] Both Mother and Violet tested positive for cocaine at Violet's birth. At the time WCHHS got involved, Mother lived with her stepfather (Father) in his mother's home and refused to disclose the paternity of her children. Following repeated positive drug screens for Mother over the next seven months, a WCHHS supervisor conducted a home visit in October of 2022 and observed "clutter and debris" and "layers of dust . . . and dirt" throughout the home. During the visit, Father's mother also reported Mother's continued drug use.

One week later, WCHHS filed a verified petition alleging that Heather and Violet were neglected and dependent juveniles under N.C.G.S. § 7B-101. The trial court granted WCHHS nonsecure custody of Heather and Violet, appointed the children a guardian *ad litem* (GAL), and set a custody hearing for the following week. At that hearing, Father asserted that he was the children's biological father and

---

[2]    Mother voluntarily relinquished her parental rights to both children and is not a party to this appeal.

consented to genetic testing, which confirmed his paternity. Following the hearing, the trial court found that the children were "exposed to a substantial risk of physical injury or sexual abuse" due to their parents' creation of unsafe living conditions and "fail[ure] to provide . . . adequate supervision or protection." Finding no appropriate relative placements, the trial court ordered Heather and Violet to remain in WCHHS custody.

Following a January 2023 hearing, the trial court ordered Mother and Father to comply with a WCHHS case plan that included completing parenting education classes, obtaining and maintaining suitable housing and income, engaging in a visitation plan, completing a psychological evaluation, and remaining in consistent contact with WCHHS. The trial court reviewed the matter at a permanency-planning hearing three months later. Despite a finding of both parents' "adequate progress" on the case plan, the trial court also found that Father "has not submitted to a hair strand [drug] test because he believes that the involuntary cutting of his hair will cause him to lose his strength," and that Father "testified . . . that he feels ridiculed and harassed by WCHHS and that WCHHS has falsified documents." The trial court found neither claim credible. The trial court found WCHHS custody to be in the children's best interests and ordered a primary permanent plan of reunification with a secondary plan of adoption.

Following an August 2023 permanency-planning hearing, the trial court found that Mother and Father had "ceased to make any real significant progress" on their

respective case plans. The court report prepared by the children's GAL noted "grave concerns regarding reunification with [Father] as he has demonstrated that he is not an appropriate parent" by "develop[ing] a romantic and sexual relationship with a teenager who[m] he raised as his own daughter." Notwithstanding, the trial court maintained the primary plan of reunification and secondary plan of adoption.

In the time between that hearing and a November 2023 permanency-planning hearing, Father was arrested and charged with incest and multiple counts of indecent liberties with a minor, with the victims named as Mother and her sister. The trial court suspended Father's visitation with the children and changed their primary plan to reunification solely with Mother, with guardianship as the secondary plan. Reviewing the matter at an October 2024 permanency-planning hearing, the trial court found that Father remained incarcerated, that Mother's case plan progress "has stopped," and that the children's foster parents were "willing to provide a permanent home for the children through adoption." The trial court changed the children's primary plan to adoption with a secondary plan of reunification.

On 18 December 2024, WCHHS moved to terminate the parental rights of Father and Mother to Heather and Violet. Prior to the adjudication and disposition hearing, Mother voluntarily relinquished her parental rights to both children. The trial court then conducted the hearing, at which Mother testified to wanting the children to remain with their current foster parents because "as much as it . . . hurt [her] to not keep trying and getting the kids back, [she] want[ed] them to be safe . . .

and loved," and "they're where they need to be." Mother also testified to Father's drug use and to "multiple arguments between [Father] and his mother," which "got to the point where he'd get violent with her, smashing holes in the walls" in the children's presence. Following the hearing, the trial court found grounds for termination of Father's parental rights based on neglect, dependency, and willfully leaving the children in foster care for over twelve months. Concluding that termination would be in the children's best interests, the trial court terminated Father's parental rights. Father timely appealed.

## II.     **Jurisdiction**

Under N.C.G.S. § 7B-1001, this Court has jurisdiction to hear Father's appeal because it concerns an "order that terminates [his] parental rights." N.C.G.S. § 7B-1001(a)(7) (2025).

## III.     **Analysis**

We review a trial court's adjudication of grounds for termination to determine whether "clear, cogent, and convincing evidence" supports its findings which, in turn, "support the conclusions of law." *In re J.S.*, 374 N.C. 811, 814 (2020) (quotation omitted). "Unchallenged findings of fact are deemed supported by competent evidence and are binding on appeal." *Id.* We review *de novo* "whether a trial court's findings of fact support its conclusions of law" but review a trial court's best-interests determination at the dispositional stage "only for abuse of discretion." *Id.* at 815, 822. We are satisfied that Father's counsel fully complied with Rule 3.1(e) of our Rules of

Appellate Procedure.[3] Because Father has not filed a pro se brief, we conduct "an independent review . . . of the issues identified" in his counsel's brief. *In re L.E.M.*, 372 N.C. 396, 402 (2019). Specifically, we review whether the trial court erred by failing to distinguish between "competent evidence" and "clear and convincing evidence" when taking judicial notice of the prior orders in this case.

In termination actions, the petitioner bears the burden of proving "all findings of fact" with "clear, cogent, and convincing evidence." N.C.G.S. § 7B-1109(f). Nonetheless, a trial court may take judicial notice of adjudicative facts "not subject to reasonable dispute" because they are either "generally known within the territorial jurisdiction of the trial court" or are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." N.C. R. Evid. 201(b); *see* N.C.G.S. § 7B-1109(f) (applying civil rules of evidence to termination hearings). Judicial notice may extend to a trial court's "findings of fact made in prior orders, even when those findings are based on a lower evidentiary standard" because we "presume[ ]" the trial court "disregarded any incompetent evidence and relied upon the competent evidence" in a non-jury proceeding. *In re A.C.*, 378 N.C. 377, 386 (2021) (quotation omitted). Even so, "the trial court may not rely solely on prior court

---

[3] Father's counsel conducted a thorough review of the record, requested and received no-merit review from the Office of the Parent Defender, advised Father of his option to file a pro se brief, and identified a potential issue for review in her no-merit brief. *See* N.C. R. App. P. 3.1(d).

orders and reports"; it must "receive some oral testimony at the hearing and make an independent determination regarding the evidence presented." *Id.*

Here, the challenged order states that the trial court "takes judicial notice of the record and findings of fact made in prior orders in this matter" and that it "disregard[s] any incompetent evidence therein." In reaching its decision, the trial court stated at the hearing that, as part of taking judicial notice, it had considered "[t]he complaints that were a part of the [GAL's] request initially in this case to have a" DVPO put in place by Mother's mother against Father. In the termination order, the trial court found that "[Father] was married to [Mother's] mother. Domestic violence and substance abuse abounded in the home . . . . [Father's] violence towards women continued in his relationship with his own mother, and in the presence of [Mother]." Father's counsel claims that this finding references "old incident reports" attached to the motion for DVPO "and not prior adjudications nor orders." Because these incident reports were "not material, reliable, [ ] or relevant" to the case at bar," Father's counsel argues that the trial court could not properly take judicial notice of them.

But as Father's counsel also notes in the brief on appeal, the record does not indicate whether any party objected to the trial court's taking judicial notice of these documents or their admission into evidence; thus, the parties have waived appellate review of this issue. *See* N.C. R. App. P. 10(a)(1); *In re W.L.M. & B.L.M.*, 181 N.C. App. 518 (2007) (failure to object to trial court's taking judicial notice of underlying

juvenile case files in termination action waived appellate review of their admissibility). Additionally, Mother testified at the hearing to Father's abusive conduct and domestic violence incidents. Father's psychological evaluation, admitted into evidence, also contains Father's own disclosures of conduct including frequent screaming and arguments with Mother's mother, spraying her with a water hose, hitting her father in the head with a shovel, and running him over with a car. Thus, any potential error in taking judicial notice did not prejudice Father because other competent evidence supported the trial court's findings regarding domestic violence.

Having identified no error in the presented issue, our review of the entire record on appeal and hearing transcript satisfies this Court that the trial court did not err in concluding that grounds existed under N.C.G.S. § 7B-1111 to terminate Father's parental rights to Heather and Violet for neglect and dependency, and that doing so would be in the best interests of both children. *See* N.C.G.S. § 7B-1111(a)(1), (6). Because clear, cogent, and convincing evidence supports the trial court's unchallenged findings of fact regarding both adjudication and disposition of the termination proceeding, we affirm the trial court's order terminating Father's parental rights. *See J.S.*, 374 N.C. at 814.

## IV.  Conclusion

For the reasons discussed above, this Court affirms the trial court's termination of Father's parental rights.

AFFIRMED.

Judges GORE and FREEMAN concur.

Report per Rule 30(e).